TIMOTHY ELDER – 277152
TRE Legal Practice
4226 Castanos Street
Fremont, California 94536
Telephone:    (410) 415-3493
Facsimile:     (888) 718-0617
Email:          telder@trelegal.com

LISA ELLS – 243657
MICHAEL S. NUNEZ – 280535
ROSEN BIEN GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California 94105-2235
Telephone:    (415) 433-6830
Facsimile:     (415) 433-7104
Email:          lells@rbgg.com
                 mnunez@rbgg.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, on behalf of itself and all others similarly situated; GREG DEWALL, on behalf of himself and all others similarly situated; RICHIE FLORES, on behalf of himself and all others similarly situated; MICHAEL HINGSON, on behalf of himself and all others similarly situated; MICHAEL RICHARDSON, on behalf of himself and all others similarly situated; and TINA THOMAS, on behalf of herself and all others similarly situated,<br><br>       Plaintiffs,<br><br>       v.<br><br>GREYHOUND LINES, INC., and FIRSTGROUP AMERICA, INC.,<br><br>       Defendants. | Case No. 3:17-cv-3368<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12101, *ET SEQ.*, THE CALIFORNIA UNRUH CIVIL RIGHTS ACT, CAL. CIV. CODE §§ 51 & 52, AND THE CALIFORNIA DISABLED PERSONS ACT, CAL. CIV. CODE §§ 54-54.3**<br><br>Judge:  Hon. NEW<br><br>Trial Date:        None Set |

[3136282-12]

COMPLAINT FOR VIOLATIONS OF A.D.A., 42 U.S.C. §§ 12101, *ET SEQ.*, CAL. UNRUH CIVIL RIGHTS ACT, CAL. CIV. CODE §§ 51 & 52, AND CAL. DISABLED PERSONS ACT, CAL. CIV. CODE §§ 54-54.3

# INTRODUCTION

1.      Many blind people depend on Greyhound bus service for their travel needs. Bus transit is often the only affordable and realistic way for the blind to visit family, participate in education, travel for work, or reach rural destinations. Increasingly, this critical transportation for the blind is purchased by accessing information on an Internet website or mobile application. In the case of Greyhound, the blind are unnecessarily denied equal access to the same online information and services offered to others because Greyhound's website and mobile software application ("mobile application") are inaccessible to screen-reading technology used by blind individuals to operate websites and mobile applications. This relegates blind Greyhound customers to a second-class passenger experience. If Greyhound's online technology were accessible, then blind travelers could independently purchase their transportation with the same pricing, information, and convenience available to others. In contrast with Greyhound, many other transportation providers, businesses, and government entities operate websites and mobile applications that are accessible to blind individuals.

2.      This class action seeks to stop Defendants' continual violations of the civil rights of blind bus travelers. Plaintiff National Federation of the Blind ("NFB") sues on behalf of itself and its blind members, including Plaintiffs Greg DeWall, Ricardo ("Richie") Flores, Michael Hingson, Michael Richardson, and Tina Thomas. These blind individuals have all been and will continue to be denied equal access to the information and services offered through the Greyhound-branded public website and mobile application. All Plaintiffs sue on behalf of themselves and a class of similarly situated blind individuals throughout the United States and California. As used in this complaint, the term "blind" refers to all individuals with vision disabilities within the meaning of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*

3.      Plaintiffs and the blind Class have been and continue to be denied equal access due to Defendants' refusal to modify their Greyhound website and mobile

COMPLAINT FOR VIOLATIONS OF A.D.A., 42 U.S.C. §§ 12101, *ET SEQ.*, CAL. UNRUH CIVIL RIGHTS ACT, CAL. CIV. CODE §§ 51 & 52, AND CAL. DISABLED PERSONS ACT, CAL. CIV. CODE §§ 54-54.3

[3136282-12]

1  application in compliance with longstanding nonvisual access standards. Blind persons

2  regularly use a wide range of accessible websites and mobile applications through the use

3  of screen-reader technology. Screen-reader software converts visual information on a

4  digital display into synthesized speech or refreshable Braille to enable nonvisual access.

5       4.     Defendants provide bus transportation to over 3,100 bus service locations

6  throughout the United States, including throughout California. Defendants use the

7  Greyhound website and mobile application to communicate important information and

8  facilitate service to potential and existing customers.

9       5.     Greyhound's cost-effective transportation services often represent the only

10  reliable transportation option available for blind individuals traveling outside of urban

11  centers. However, many blind individuals, including the Plaintiffs, have been prevented

12  from reviewing and booking bus tickets on the same terms enjoyed by others and from

13  accessing trip information from the Greyhound app on their mobile phones. Greyhound's

14  failure to provide equal access harms blind travelers in several ways, including by

15  preventing them from booking trips, deterring them from browsing available bus routes,

16  charging them higher prices for tickets, and generally providing blind travelers inferior

17  service.

18       6.     Congress provided a clear national mandate for the elimination of

19  discrimination against individuals with disabilities when it enacted the Americans with

20  Disabilities Act ("ADA"). Such prohibited discrimination includes discrimination in the

21  provision of transportation services and public accommodations.

22       7.     Many blind customers have contacted Greyhound to complain about their

23  inability to use Greyhound's inaccessible website and mobile application. Plaintiffs wrote

24  to Greyhound in June of 2016 to request that Greyhound modify its technology to provide

25  equal access to blind customers. Greyhound refused and has not acted to provide equal

26  access on its own accord.

27                  **JURISDICTION**

28       8.     This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1331 and 42 U.S.C. § 12188 for Plaintiffs' claims arising under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*

9.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the Individual Plaintiffs' pendent claims under the California Unruh Civil Rights Act (California Civil Code §§ 51, *et seq.*) and the Disabled Persons Act (California Civil Code §§ 54-54.3).

## VENUE

10.     Venue is proper in the Northern District pursuant to 28 U.S.C. §§ 1391(b)-(c).

11.     Defendants are registered to do business in California. Defendants do business in the Northern District of California, including operating fleets of vehicles providing transportation services at bus stops located throughout this district, employing workers at bus stations within this district, and selling transportation services within this district.

12.     Defendants are subject to personal jurisdiction in the Northern District of California. Defendants have been and are committing the acts alleged herein in the Northern District of California, have been and are violating the rights of consumers with disabilities in this district, and have been and are causing injury to consumers with disabilities in this district.

13.     Plaintiff NFB has many members who reside in the Northern District of California. Plaintiff Flores resides in the Northern District of California and has experienced injury in this district. Plaintiff DeWall has attempted unsuccessfully to book travel with Greyhound into this district.

## PARTIES

14.     Plaintiff NFB, a national membership organization of blind persons, is a nonprofit corporation duly organized under the laws of the District of Columbia, with its principal place of business in Baltimore, Maryland. It has affiliates in all 50 states, including California. The vast majority of its approximately 50,000 members are

4

[3136282-12]

individuals who are blind and disabled within the meaning of the statutes at issue here. The purpose of the NFB is to promote the general welfare of blind Americans by assisting blind individuals in their efforts to integrate themselves into society on terms of equality and by removing barriers and changing social attitudes, stereotypes, and mistaken beliefs about the limitations created by blindness. The NFB and many of its members have been actively involved in promoting accessible technology and transportation for the blind, so that blind persons can live and work independently in today's world. NFB members have encountered and will continue to encounter discriminatory service because of Defendants' use of unnecessarily inaccessible web-based and mobile technology. NFB sues on behalf of its members who have been denied equal access to or deterred from using Greyhound bus service in contravention of their civil rights.

15. Plaintiff Greg DeWall is blind, uses screen-reader software to operate websites and mobile applications, is a member of NFB, and currently resides in Sacramento, California. Mr. DeWall is employed as an instructor of orientation and mobility. Mr. DeWall often relies on bus service to transport himself, his wife, and his young son to and from the Sacramento area. Mr. DeWall also uses online technology to research transportation options for many of his blind students who are learning to travel independently and develop orientation and mobility skills. Mr. DeWall has attempted to use the Greyhound website and the Greyhound mobile application and has been unable to access information and services offered to others through the website or mobile application. Mr. DeWall desires to use the Greyhound website and mobile application and has the necessary computer and smart phone technology to do so if it were accessible to the blind.

16. Plaintiff Richie Flores is blind, uses screen-reader software to operate websites and mobile applications, is a member of NFB, and currently resides in San Leandro, California. Mr. Flores is employed as a Youth Services Coordinator at a San Francisco-based non-profit organization. Mr. Flores regularly has a need to book Greyhound bus trips when traveling to visit relatives outside of California. Mr. Flores also

COMPLAINT FOR VIOLATIONS OF A.D.A., 42 U.S.C. §§ 12101, *ET SEQ.*, CAL. UNRUH CIVIL RIGHTS ACT, CAL. CIV. CODE §§ 51 & 52, AND CAL. DISABLED PERSONS ACT, CAL. CIV. CODE §§ 54-54.3

[3136282-12]

1   has a need to use the Greyhound website and the Greyhound mobile application to check

2   travel options for the youth that he serves in his job. Mr. Flores has attempted to use the

3   Greyhound website and the Greyhound mobile application and has been unable to access

4   the same information and services offered to others through the website and mobile

5   application. Mr. Flores desires to use the Greyhound website and mobile application and

6   has the necessary computer and smart phone technology to do so if it were accessible to

7   the blind.

8        17.    Plaintiff Michael Hingson is blind, uses screen-reader software to operate

9   websites and mobile applications, is a member of NFB, and currently resides in

10  Victorville, California. Mr. Hingson is a public speaker and a best-selling author.

11  Mr. Hingson regularly travels by bus for leisure, speaking engagements, and book

12  promotions. Mr. Hingson also often travels between Los Angeles and Sacramento in

13  connection with his advocacy work for NFB. Mr. Hingson has attempted to use the

14  Greyhound website and the Greyhound mobile application and has been unable to access

15  information and services offered to others through the website or mobile application. Mr.

16  Hingson desires to use the Greyhound website and mobile application and has the

17  necessary computer and smart phone technology to do so if it were accessible to the blind.

18       18.    Plaintiff Michael Richardson is blind, uses screen-reader software to operate

19  websites and mobile applications, is a member of NFB, and currently resides in Los

20  Angeles, California. Mr. Richardson is employed as a member of the support staff at an

21  agency in Los Angeles that enables people with developmental disabilities to live and

22  work in their local communities. Mr. Richardson is also a licensed insurance broker,

23  selling life insurance policies throughout California in his spare time. Mr. Richardson has

24  attempted to use the Greyhound website and the Greyhound mobile application and has

25  been unable to access information and services offered to others through the website or

26  mobile application. Mr. Richardson desires to use the Greyhound website and mobile

27  application and has the necessary computer and smart phone technology to do so if it were

28  accessible to the blind.

[3136282-12]

19.     Plaintiff Tina Thomas is blind, uses screen-reader software to operate websites and mobile applications, is a member of NFB, and currently resides in Los Angeles, California. Ms. Thomas is employed as an instructor at a nonprofit agency that teaches independent living skills to disabled persons in Los Angeles. Ms. Thomas regularly travels by bus between her home in Los Angeles and Las Vegas and Reno, Nevada, as well as Sacramento to visit family or attend sporting events. Ms. Thomas has attempted to use the Greyhound website and the Greyhound mobile application and has been unable to access information and services offered to others through the website or mobile application. Ms. Thomas desires to use the Greyhound website and mobile application and has the necessary computer and smart phone technology to do so if it were accessible to the blind.

20.     The term "Named Plaintiffs" used in this Complaint means NFB, on behalf of itself and its blind members who have been denied access to or deterred from using the Greyhound website or mobile application because of its inaccessible design, Mr. DeWall, Mr. Flores, Mr. Hingson, Mr. Richardson, and Ms. Thomas, unless otherwise indicated. The term "Individual Plaintiffs" used in this complaint means only Mr. DeWall, Mr. Flores, Mr. Hingson, Mr. Richardson, and Ms. Thomas, unless otherwise indicated.

21.     Defendant Greyhound Lines, Inc., a for-profit transportation company incorporated in Delaware, headquartered in Texas, and registered to do business in California, is a wholly owned subsidiary of its parent corporation co-Defendant, FirstGroup America, Inc., and is in the business of promoting and providing bus transportation throughout California and the United States.

22.     Defendant FirstGroup America, Inc., is a parent corporation of the wholly owned co-Defendant, Greyhound Lines, Inc., and is in the business of promoting and providing bus transportation throughout California and the United States. FirstGroup America, Inc. is registered to do business in California, and its principal place of business is in Cincinnati, Ohio. Upon information and belief, this parent corporation is a required party pursuant to Federal Rule of Civil Procedure 19(a)(1) because in its absence, the court

7

[3136282-12]

1   cannot accord complete relief from Greyhound Lines, Inc. alone.

2        23.    Greyhound Lines, Inc., and FirstGroup America, Inc., are collectively

3   referred to as "Defendants" or "Greyhound" herein unless otherwise indicated.

4                         **CLASS ACTION ALLEGATIONS**

5        24.    Plaintiffs seek certification of the following nationwide class pursuant to

6   Fed. R. Civ. P. 23(a) and 23(b)(2): "all legally blind individuals who have been and/or are

7   being denied equal access to the services, privileges, advantages, and accommodations that

8   Defendants offer through the Greyhound website or mobile software application, because

9   those services, privileges, advantages, and accommodations are not independently

10   accessible to blind persons who must use screen-reader software to access websites and

11   mobile software applications."

12        25.    Plaintiffs also seek certification of the following California-wide Subclass

13   pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3): "all legally blind California individuals who

14   have been denied equal access to the services, privileges, advantages, and accommodations

15   that Defendants offer through the Greyhound website or mobile software application,

16   because those services, privileges, advantages, and accommodations are not independently

17   accessible to blind persons who must use screen-reader software to access websites and

18   mobile software applications."

19        26.    The persons in the Class and California Subclass are so numerous that

20   joinder of all such persons is impractical and the disposition of their claims in a class

21   action is a benefit to the parties and to the Court.

22        27.    The action involves common questions of law and fact affecting the parties

23   to be represented in that they all have been and/or are being denied their civil rights to full

24   and equal access to, and use and enjoyment of, Greyhound's services, which are made

25   available through a nexus to the Greyhound website and mobile software application.

26        28.    The case arises out of Defendants' common policy and practice of operating

27   a website and a mobile application that do not provide equal access for blind persons using

28   screen-reader software.

[3136282-12]

29.     The claims of the Named Plaintiffs are typical of those of the Class and California Subclass because all class members have been and continue to be adversely affected by Defendants' exclusionary conduct described herein, and the claims of the Named Plaintiffs and all class members are based on the same legal theories and proof of Defendants' inaccessible website and mobile application.

30.     The Named Plaintiffs will fairly and adequately represent the interests of the members of the Class and California Subclass because: (1) Named Plaintiffs are willing and able to represent the proposed classes and have every incentive to pursue this action to a successful conclusion; (2) Named Plaintiffs' interests are not antagonistic to those of the other class members; and (3) Named Plaintiffs are represented by counsel experienced in litigating complex class actions based on issues affecting blind persons, including class actions brought under the Americans with Disabilities Act and California disability access laws.

31.     Class treatment is in the public interest. The public has an interest in ensuring disabled consumers are included in all aspects of the economy and affordable methods of transportation.

32.     Nationwide class certification of the claims is appropriate pursuant to Fed. R. Civ P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Named Plaintiffs and the Class as a whole.

33.     Certification of the California Subclass is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to class members predominate over questions affecting only individual class members.

34.     Certification of the California Subclass is also appropriate under Fed. R. Civ. P. 23(b)(3) because it is superior to other available methods for the fair and efficient adjudication of this litigation. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation and technical expert evidence necessary to establish Defendants' liability.

1  Individualized litigation would increase the delay and expense to all parties and would

2  multiply the burden on the judicial system presented by the complex legal and factual

3  issues of this case. Individualized litigation would also present the potential for

4  inconsistent or contradictory judgments. In contrast, the class action device would present

5  far fewer management difficulties and would provide the benefits of single adjudication,

6  economy of scale, and comprehensive supervision by a single court on the issue of

7  Defendants' liability. Class treatment of the liability issues will ensure that all claims and

8  claimants are before this Court for consistent adjudication of the liability issues.

9      35.    References to "Plaintiffs" shall be deemed to include Named Plaintiffs, and

10  each member of the Class, unless otherwise indicated.

11                              **FACTUAL ALLEGATIONS**

12                          **The Greyhound.com Website**

13      36.    Defendants operate a branded Internet website located at

14  https://www.greyhound.com/ for potential and existing customers to conveniently obtain

15  information and services related to bus transportation. Among other features on the

16  website, Greyhound promotes:

17  •      Browsing bus schedules;

18  •      Finding bus stops;

19  •      Booking trips;

20  •      Exploring travel locations;

21  •      Managing booked trips;

22  •      Obtaining general information about Greyhound and its services;

23  •      Tracking buses in real-time;

24  •      Managing frequent traveler loyalty accounts;

25  •      Contacting Greyhound;

26  •      Getting topical help and answers to frequently asked questions; and

27  •      Obtaining other useful information and services related to bus travel.

28      37.    Defendants encourage customers to book tickets through the website instead

10

[3136282-12]

1   of over the telephone by instituting a policy of charging a $12 convenience fee for any

2   ticket that is booked over the telephone. This policy results in blind customers being

3   charged a convenience fee when they are unable to independently use the website and try

4   to book their tickets over the telephone.

5      38.   Customers use Defendants' website to access many services available at

6   Defendants' bus stations in California and throughout the United States. For example,

7   customers may purchase tickets, manage booked trips, manage traveler loyalty accounts,

8   and obtain bus schedule information both on Defendants' website and in-person at

9   Defendants' bus stations. However, accessing these services in-person at Defendants' bus

10  stations is inferior to accessing these services through Defendants' website. Services

11  available through Defendants' website may be accessed at any time from any location

12  where there is Internet access. In contrast, to use these services such as purchasing a ticket

13  at Defendants' bus stations, a customer must either arrive at the station early on the day of

14  travel or make a separate trip to the station before traveling. Making a separate trip to one

15  of Defendants' bus stations forces the customer to incur the time and expense of traveling

16  to the station that the customer would not need to incur if accessing the same services

17  through the website. Arriving at a station early on the day of travel to purchase tickets is

18  undesirable because, as Defendants' website states, "buying in advance is usually a better

19  deal" and because tickets for the desired trip may sell out beforehand.

20     39.   Blind persons regularly access a broad range of accessible Internet websites

21  through the use of screen-reader technology, which can translate visual information on a

22  website into nonvisual formats such as synthesized speech and refreshable Braille. A blind

23  screen-reader user can use a series of keyboard commands in place of a point-and-click

24  mouse to read and interact with on-screen text and controls. A blind screen-reader user can

25  also use a series of finger gestures to read and interact with content and controls on a

26  touchscreen interface. If a website complies with longstanding digital accessibility

27  standards, a blind person can typically use that accessible website with an equivalent ease

28  of use to that of a sighted person through the use of nonvisual feedback and navigation.

11

[3136282-12]

40.     The industry standard to measure whether a website is accessible to a blind person using a screen reader is the Web Content Accessibility Guidelines (WCAG 2.0, Level AA), published by the World Wide Web Consortium (W3C). The W3C is an international community consisting of member organizations, a full-time staff, and the public that works to develop consensus on Web standards for the architecture of the Internet, including, but not limited to, standards for browser interoperability, data compatibility, security, internationalization and language translation, privacy, and accessibility for persons with disabilities.

41.     Members of Plaintiff NFB and many other blind individuals have unsuccessfully attempted to use the information and transportation services offered through Defendants' website to travel throughout California and the United States. Plaintiff NFB has received many complaints from its members who have been unable to access the same convenient information and services that are offered to other potential and existing Greyhound customers through Defendants' website. This lack of equal access to use Defendants' website has resulted in blind members of NFB being charged extra to purchase tickets over the telephone or in paying higher prices for tickets at the ticket counter at the time of travel.

42.     Plaintiff Greg DeWall is blind, uses the JAWS for Windows screen-reader program ("JAWS"), and is a member of NFB. Plaintiff DeWall lives in Sacramento, California and regularly depends on transportation services like Greyhound to travel between his home in Sacramento and destinations such as Chico, California, Lake Tahoe, Nevada, and the San Francisco Bay Area. Mr. DeWall regularly travels with his wife, who also is blind, and their young son.

43.     In May 2016, Mr. DeWall attempted to use the Greyhound website to determine if bus options were available for him and his family to take a trip for Memorial Day weekend on May 30, 2016. Mr. DeWall uses JAWS, a popular screen-reader program that enables him to access many different kinds of websites while using the Microsoft Windows operating system. While using JAWS, Mr. DeWall attempted to use the search

12

[3136282-12]

functionality on the Greyhound website to determine price and schedules for service between Sacramento and the Santa Cruz, California, area. However, he was not able to discover whether any service existed because the edit fields used to input departure and destination locations for searching schedules were not working properly with his screen-reader program. He also showed the website to his wife, who uses a different screen-reader program called ZoomText, but she also was unable to enter information into the edit fields with ZoomText. Both Mr. DeWall and his wife are familiar with how to properly fill out an accessible edit field on a website with their respective screen readers and took steps to confirm that the problems were not based on user error. Because they could not access price and schedule information, Mr. DeWall and his wife booked travel to Santa Cruz through one of Greyhound's competitors instead.

44.     Mr. DeWall and his family would like to book travel through Defendants' website if it were accessible to blind users. Mr. DeWall also wants to use the website for work projects. Mr. DeWall's employment as an instructor of orientation and mobility for blind travelers requires him to regularly research transportation options for his students. Mr. DeWall wants to be able to check bus route and price options on the Greyhound website on behalf of his blind students. Mr. DeWall wants Defendants to modify the Greyhound website so that he can use it with his screen-reader program.

45.     Mr. DeWall has never observed any notices or text on the website asking him to assent to terms or claiming that his use of the website was predicated on acceptance of any specific conditions.

46.     Plaintiff Richie Flores is blind, uses the JAWS screen-reader program, and is a member of NFB. Mr. Flores lives in San Leandro, California and regularly uses Greyhound bus service when he is visiting family in Texas. Mr. Flores also needs to use the Greyhound website to check price and availability for his work projects. In his role as a youth coordinator, he is often required to obtain three quotes for certain youth to travel from rural locations. Greyhound often represents one of the necessary three travel providers from which he must obtain a quote.

COMPLAINT FOR VIOLATIONS OF A.D.A., 42 U.S.C. §§ 12101, *ET SEQ.*, CAL. UNRUH CIVIL RIGHTS ACT, CAL. CIV. CODE §§ 51 & 52, AND CAL. DISABLED PERSONS ACT, CAL. CIV. CODE §§ 54-54.3

[3136282-12]

47.     On the evening of May 4, 2017, Mr. Flores attempted to use the Greyhound website to book a bus ticket for one of his youth program participants. Mr. Flores was attempting to purchase a Greyhound bus ticket for a youth participant who needed to travel on May 18, 2017 for an event in San Francisco. Mr. Flores was unable to use the website with his JAWS screen-reader in order to obtain the information he needed to purchase the ticket. Based on his previous experience, Mr. Flores was aware that Defendants had a policy of charging convenience fees to book tickets over the telephone. Mr. Flores was unable to purchase the ticket that evening and had to book it on May 5, 2017 with the assistance of his personal volunteer reader, who clicked on the sections of the website with a mouse where Mr. Flores was unable to do it for himself with the keyboard commands of his JAWS screen-reader.

48.     Mr. Flores had booked Greyhound bus tickets over the telephone on multiple occasions in 2016 and was charged a convenience fee each time. On at least one of these occasions in 2016, Mr. Flores explained that the reason he was calling the telephone line was because of his blindness and his inability to use the inaccessible Greyhound website. The Greyhound agent explained that the policy was to charge a convenience fee for booking over the telephone. Mr. Flores was forced to accept the charge because he had no other way to accessibly book the tickets in advance on those occasions.

49.     Mr. Flores wants Defendants to modify the Greyhound website so that he and other blind persons can independently use it for its intended purpose.

50.     Mr. Flores has never observed any notices or text on the website asking him to assent to terms or claiming that his use of the website was predicated on acceptance of any specific conditions.

51.     Plaintiff Michael Hingson is blind, uses the JAWS screen-reader program, and is a member of NFB. He regularly travels from his home in Victorville, California to various locations within California for business. Mr. Hingson has attempted to use the Greyhound website with his JAWS screen-reader program to obtain information and services on several occasions.

[3136282-12]

52.     In mid-February 2017, Mr. Hingson attempted to use the Greyhound website to book a bus ticket from Victorville to San Diego for a conference that was occurring from February 27 through March 5, 2017. Mr. Hingson was unable to complete his purchase because of the inaccessible nature of the Greyhound website. Mr. Hingson then called the Greyhound telephone line to book his ticket. The Greyhound agent told him that he would be charged a convenience fee for booking a ticket over the telephone. Mr. Hingson explained that he thought this was inappropriate because he could not use the website to obtain the lower price due to its inaccessible design. The agent maintained that Defendants' policy was to charge for any tickets booked over the telephone. Mr. Hingson declined the offer of the convenience fee and did not book his ticket over the telephone.

53.     Mr. Hingson then went back to retry the website with JAWS. After 25 to 30 minutes of struggling with the website to make it work, he was able to get a ticket partially selected and ready for purchase. However, he was unable to complete the transaction because of the inaccessible design of the Greyhound website. Mr. Hingson is an experienced JAWS user and is familiar with recognizing inaccessible web content based on how it fails to interact with his JAWS screen-reader program. On this occasion, recognizing that he would not be able to complete the transaction with JAWS, Mr. Hingson had to abandon his effort and return to the website another time with sighted assistance to help him book the ticket. Mr. Hingson's wife, who is sighted, eventually had time to help him book a ticket and was able to complete the transaction, from start to finish, within 5 minutes. This experience was frustrating for Mr. Hingson because in previous versions of the Greyhound website from 2014 and earlier, Mr. Hingson had been able to independently purchase his tickets with relative ease and efficiency with JAWS. Greyhound redesigned its website sometime after 2014 and did not incorporate accessibility into the final product, which in addition to the most recent experience in 2017, also prevented Mr. Hingson from being able to use the website on several occasions in 2015 and 2016 for various business trips.

54.     Mr. Hingson wants Defendants to modify the Greyhound website so that he

15

[3136282-12]

1    and other blind persons can independently use it for its intended purpose.

2        55.    Mr. Hingson has never observed any notices or text on the website asking

3    him to assent to terms or claiming that his use of the website was predicated on acceptance

4    of any specific conditions.

5        56.    Plaintiff Tina Thomas is blind, uses the JAWS screen-reader program, and is

6    a member of NFB. Ms. Thomas regularly uses bus services such as Greyhound to travel

7    between her home in Los Angeles and the cities of Las Vegas and Reno, Nevada, as well

8    as Sacramento. She has friends and family in Las Vegas and enjoys frequently visiting

9    them and attending championship boxing and martial arts events.

10       57.    In February 2017, Ms. Thomas attempted to use her JAWS screen-reader

11   program on the Greyhound website to check on the availability of bus tickets between Los

12   Angeles and Los Vegas for a trip that she wanted to take in late-June 2017 to visit her

13   uncle and a friend. She was unable to complete the transaction with her JAWS program

14   because of the inaccessible design of the Greyhound website. Ms. Thomas is an

15   experienced JAWS user and is familiar with how it reacts when encountering web content

16   that is not accessible.

17       58.    Previously, Ms. Thomas attempted to book a trip on the Greyhound website

18   in June 2016 from Los Angeles to Sacramento and a trip in February 2015 from Los

19   Angeles to Las Vegas. She was unable to independently complete her transaction on either

20   of those trips because the website was not accessible using her JAWS screen-reader

21   program. For the February 2015 trip, she called Defendants' telephone line after she was

22   unable to use the website. She was told by a ticket agent that she would be charged a

23   convenience fee for booking on the telephone. Ms. Thomas explained that this was not

24   appropriate because she had attempted to independently book the ticket on the website, but

25   had been prevented from doing so because of the website's inaccessible design. The ticket

26   agent maintained that the convenience charge was Defendants' policy. Ms. Thomas

27   relented and paid the higher ticket price.

28       59.    Ms. Thomas has never observed any notices or text on the website asking her

16

COMPLAINT FOR VIOLATIONS OF A.D.A., 42 U.S.C. §§ 12101, *ET SEQ.*, CAL. UNRUH CIVIL RIGHTS ACT,
CAL. CIV. CODE §§ 51 & 52, AND CAL. DISABLED PERSONS ACT, CAL. CIV. CODE §§ 54-54.3

to assent to terms or claiming that her use of the website was predicated on acceptance of any specific conditions.

60.     Defendants make the Greyhound website freely available to the public and actively promote it for use by all potential and existing customers. A visitor to the website is not required to create an account or affirmatively assent to any terms before accessing the information and services available on the website. Registration is optional and is only required for establishing a loyalty rewards account. No disclaimers or conditions of use are displayed on the home page of the Greyhound website.

## The Mobile Application

61.     In addition to the Greyhound website, Defendants promote a Greyhound mobile application that can be downloaded to a personal mobile device such as an Apple iPhone or Google Android-based smart phone. Defendants' mobile application offers travelers convenient access to trip information from the palm of their hand. Further, the mobile application allows travelers to review downloaded information about trips even when the traveler is off the Internet or out of range from cellular phone service. The mobile application also offers several other benefits that are not available on the website, including the ability to quickly open the application and access trip information in one's personal account.

62.     According to Defendants' website, the mobile application can be used to:

- "Search and book - easily- Find schedule and price information to book your tickets on the go

- Sign in to access rewards- Sign in to your Road Rewards account to use rewards, and collect points for the trips you book.

- Access all your travel details- See your upcoming trips. You'll also find station locations, information and contact details."

63.     Defendants advertise the mobile application as follows: "Put the booking experience in the palm of your hand with all the features of the website including searching schedules, booking a trip, accessing Road Rewards, saving with our discounts, finding your terminal location and more."

[3136282-12]

64.     Defendants encourage customers to book tickets through the mobile application instead of over the telephone by instituting a policy of charging a $12 convenience fee for any ticket that is booked over the telephone. This policy results in blind customers being charged a convenience fee when they are unable to independently use the mobile application and try to book their tickets over the telephone.

65.     Customers use Defendants' mobile application to access many services available at Defendants' bus stations in California and throughout the United States. For example, customers may purchase tickets, access bus schedules, and access their traveler loyalty accounts both in Defendants' mobile application and in-person at Defendants' bus stations. However, accessing these services in-person at Defendants' bus stations is inferior to accessing these services through Defendants' mobile application. Services available through Defendants' mobile application may be accessed at any time from any location where there is an Internet connection, and some services may even be accessed through the mobile application without an Internet connection. In contrast, to use these services such as purchasing a ticket at Defendants' bus stations, a customer must either arrive at the station early on the day of travel or make a separate trip to the station before traveling. Making a separate trip to one of Defendants' bus stations forces the customer to incur the time and expense of traveling to the station that the customer would not need to incur if accessing the same services through the website and mobile application. Arriving at a station early on the day of travel to purchase tickets is undesirable because, as Defendants' website states, "buying in advance is usually a better deal" and because tickets for the desired trip may sell out beforehand.

66.     Blind persons regularly use accessible mobile applications ("apps") on a wide range of devices. For example, both Apple and Google include a built-in screen-reader program in their respective iOS and Android operating systems. Screen-reader software (often referred to as "text-to-speech software") enables blind persons to operate smart phones by translating visual information and text displayed on a touchscreen device into audible synthesized speech or into refreshable Braille on a portable electronic Braille

display. This technology can enable a blind user to use a system of swipes and gestures on the surface of the touchscreen to interact with the information displayed on the device. Because of the availability of this technology on virtually every iPhone or Android mobile device, blind persons have rapidly adopted mobile devices as a tool for accessing information on the go, and, in some instances, use the mobile device as their primary form of personal computing and digital access to information.

67.     Industry standard guidelines exist for building accessible mobile applications. In addition to the W3C's WCAG 2.0 standards, both Apple and Google offer complementary guidance for developers who build mobile applications on their respective operating systems. These guidelines are available from Apple at http://developer.apple.com/library/ios/documentation/UserExperience/Conceptual/iPhone Accessibility/, and, Making Your iPhone Application Accessible: http://developer.apple.com/library/ios/documentation/UserExperience/Conceptual/iPhone Accessibility/Making_Application_Accessible/Making_Application_Accessible.html. Similar guidelines for Android are available from Google at https://developer.android.com/guide/topics/ui/accessibility/index.html. These guidelines, if followed, ensure that a developer's mobile application can be effectively used with screen-reader technology by blind consumers.

68.     Defendants' decision to depart from these guidelines and refusal to correct the design flaws prevent blind persons from using screen-reader software to navigate the multiple pages and controls within their mobile application, obtain meaningful information displayed on the screen, and ultimately use the Greyhound mobile application in substantially the same manner as a sighted user.

69.     Members of Plaintiff NFB and many other blind individuals have unsuccessfully attempted to use the information and transportation services offered through Defendants' mobile application to travel throughout California and the United States. Plaintiff NFB has received many complaints from its members who have been unable to access the same convenient information and services that are offered to other

[3136282-12]

1   potential and existing Greyhound customers through its mobile application. This lack of

2   equal access to use Defendants' mobile application has resulted in blind members of NFB

3   being charged extra to purchase tickets over the telephone or in paying higher prices for

4   tickets at the ticket counter at the time of travel.

5          70.    Plaintiff Greg DeWall downloaded the Greyhound mobile application to his

6   smart phone and attempted to use it with his screen reader in connection with his May

7   2016 travel from Sacramento to Santa Cruz. Mr. DeWall was unable to use the mobile

8   application with his screen reader because of Defendants' inaccessible design. Mr. DeWall

9   has a need and desire to use the Greyhound mobile application in the future and wants to

10  see Defendants make it accessible so that he and other blind persons can use it.

11  Mr. DeWall has never observed any notices or text in the mobile application asking him to

12  assent to terms or claiming that his use of the mobile application was predicated on

13  acceptance of any specific conditions.

14         71.    Plaintiff Richie Flores downloaded the Greyhound mobile application to his

15  smart phone and attempted to use it on May 28 to determine if he could obtain pricing for

16  an upcoming personal trip to visit his sisters in Texas. Mr. Flores was unable to use the

17  mobile application with his screen-reader because of Defendants' inaccessible design. Mr.

18  Flores has a need and desire to use the Greyhound mobile application in the future and

19  wants to see Defendants make it accessible so that he and other blind persons can use it.

20  Mr. Flores has never observed any notices or text in the mobile application asking him to

21  assent to terms or claiming that his use of the mobile application was predicated on

22  acceptance of any specific conditions.

23         72.    Plaintiff Michael Hingson downloaded the Greyhound mobile application to

24  his smart phone and attempted to use it with his screen-reader program in connection with

25  several trips, including his most recent February 2017 travel from Victorville, California to

26  San Diego. Mr. Hingson was unable to use the mobile application with his screen reader

27  because of Defendants' inaccessible design. Mr. Hingson has a need and desire to use the

28  Greyhound mobile application in the future and wants to see Defendants make it accessible

1  so that he and other blind persons can use it. Mr. Hingson has never observed any notices

2  or text in the mobile application asking him to assent to terms or claiming that use of the

3  mobile application was predicated on acceptance of any specific conditions.

4     73. Plaintiff Michael Richardson downloaded the Greyhound mobile application

5  to his smart phone and attempted to use it with his screen reader in June of 2016 for travel

6  from Los Angeles to Las Vegas. Mr. Richardson was unable to use the mobile application

7  with his screen reader because of Defendants' inaccessible design. Mr. Richardson has a

8  need and desire to use the Greyhound mobile application in the future and wants to see

9  Defendants make it accessible so that he and other blind persons can use it.

10  Mr. Richardson has never observed any notices or text in the mobile application asking

11  him to assent to terms or claiming that use of the mobile application was predicated on

12  acceptance of any specific conditions.

13     74. Plaintiff Tina Thomas downloaded the Greyhound mobile application to her

14  smart phone and attempted to use it with her screen reader in connection with several trips,

15  including, most recently, her planned travel from Los Angeles to Las Vegas in late-June

16  2017. Ms. Thomas was unable to use the mobile application with her screen reader because

17  of Defendants' inaccessible design. Ms. Thomas has a need and desire to use the

18  Greyhound mobile application in the future and wants to see Defendants make it accessible

19  so that she and other blind persons can use it. Ms. Thomas has never observed any notices

20  or text in the mobile application asking her to assent to terms or claiming that use of the

21  mobile application was predicated on acceptance of any specific conditions.

22     75. Defendants make the Greyhound mobile application freely available to the

23  public and actively promote it for use by all potential and existing customers. Individuals

24  who download the mobile application to their personal devices are not required to create an

25  account or affirmatively assent to any terms to access the information and services

26  available on the mobile application. Registration is optional and is only required for

27  establishing a loyalty rewards account. No disclaimers or conditions of use are displayed in

28  the Greyhound mobile application.

COMPLAINT FOR VIOLATIONS OF A.D.A., 42 U.S.C. §§ 12101, *ET SEQ.*, CAL. UNRUH CIVIL RIGHTS ACT,
CAL. CIV. CODE §§ 51 & 52, AND CAL. DISABLED PERSONS ACT, CAL. CIV. CODE §§ 54-54.3

[3136282-12]

**Defendants' Conduct**

76.     Even though making accessible websites and mobile applications is readily achievable, Defendants have intentionally opted not to incorporate access features for blind customers after being put on notice of the problem. Upon information and belief, many blind individuals submitted written complaints to Defendants concerning the inaccessible design of the Greyhound website and mobile application. To illustrate, individuals have posted tweets on the Twitter service asking Greyhound to address the problem:

| Twitter User | Message | Date |
|---|---|---|
| @holnan (Katie Frederick) | Just downloaded the new app from @greyhoundbus. Will definitely be contacting the developer; as the app is unusable with #VoiceOver/iOS 7. https://twitter.com/holnan/status/558053621276086273 | 1/21/2015 |
| @MC10_07 (Martin Becerra) | @GreyhoundBus just thought I'd bring to your attention the inaccessibility of both your mobile app and website for #voiceover & #jaws. #NFV https://twitter.com/MC10_07/status/623576310971891712 | 7/21/2015 |
| @karenscove (Karen Hughes) | I should not have to pay $10 more for my ticket because Greyhound is inaccessible https://twitter.com/karenscove/status/668576821613473793 | 11/22/2015 |
| @ground024 (ground024) | @GHoundBusHelp Website is completely inaccessible with screen readers used by blind. Also IOS app. Love to help team testing improvements. https://twitter.com/ground024/status/669420437294723072 | 11/24/2015 |
| @darren_duff (Darren Duff) | Anyone got experience using greyhound as far as accessibility goes? Their app is crap, and can't make heads or tails out of their website. https://twitter.com/darren_duff/status/673210135427305472 | 12/5/2015 |
| @wesderby (Wes Derby) | Suggestion for the fine people at @GreyhoundBus. Accessibility for blind users on your iPhone app AND website needs serious improvement. #FB https://twitter.com/wesderby/status/674011805501509633 | 12/7/2015 |
| @brandi_candy 92 (Brandi) | @GreyhoundBus your website is not blind friendly with my screen reader and I find it to be frustrating https://twitter.com/brandi_candy92/status/688065057834557443 | 1/15/2016 |

[3136282-12]

| Twitter User | Message | Date |
|---|---|---|
| @SherryHintze (Sherry Hintze) | @GHoundBusHelp Blind user trying to look up route/fare info. Couldn't get your website to work with my screen reader software. Now what? https://twitter.com/SherryHintze/status/693223345899335682 | 1/29/2016 |
| @alpuzz (Al Puzzuoli) | I'm stunned at the accessibility issues on the @greyhound website. Really bad if you're blind, use a screen reader. @GreyhoundBus https://twitter.com/alpuzz/status/777610000701153280 | 9/18/2016 |
| @alpuzz (Al Puzzuoli) | Yeah. I tried Firefox and Jaws, and then Safari . Then just gave up and used their phone system. Had to pay a higher fare though. https://twitter.com/alpuzz/status/777610000701153280 | 9/18/2016 |
| @PatBouchard (Patrick Bouchard) | Suppose I shouldn't be all that surprised, but wow, the Greyhound iOS app is… 100%, utterly inaccessible. #fail https://twitter.com/PatBouchard/status/795119126821949440 | 11/5/2016 |
| @remixman (Andy) | Yo @GreyhoundBus @GHoundBusHelp: Your site is an absolute nightmare for those using screen readers. Couldn't book my trip. https://twitter.com/remixman/status/814575014502600704 | 12/29/2016 |
| @remixman (Andy) | Also worth noting: your iPhone app is literally 0% accessible to VoiceOver. Absolutely atrocious. https://twitter.com/remixman/status/814575409161445378 | 12/29/2016 |

77.    On June 27, 2016, Plaintiff NFB and Plaintiffs Hingson, Richardson, and Thomas wrote to Defendants to notify them about the unlawful and exclusionary state of the Greyhound website and mobile application. On August 8, 2016, Defendants responded, contending that the website is accessible and that Greyhound has no plans to modify its mobile application. Defendant has since then failed to take adequate measures to remedy its inaccessible website and mobile application. Further, Defendants have updated the mobile application at least nine times since June 2016 without incorporating accessibility modifications and have even "added new features to make your app experience more personal to you," advertising the following benefits in the version history notes on Apple's

[3136282-12]

iOS App Store:

- "Be inspired to explore new places from the newly designed homepage."

- "Access your upcoming trips or track your bus from the new footer on the homepage or while on other screens in the app."

- "Booking has been made easier! Now you can store credit cards to your account and edit them while booking your trip in the app."

78.     Upon information and belief, Defendants have also made updates and added features to the Greyhound website since 2015 and have not made it accessible to screen-reader programs so that blind users can enjoy substantially equivalent ease of use.

**FIRST CAUSE OF ACTION**
**(Violation of Title III of the Americans with Disabilities Act)**
**(42 U.S.C. §§ 12101, *et seq.*)**
**(Injunctive Relief on Behalf of Plaintiffs and the Class)**

79.     Plaintiffs incorporate by reference the foregoing allegations as though fully set forth herein.

80.     Members of Plaintiff NFB, including individual Plaintiffs DeWall, Flores, Hingson, Richardson, and Thomas, are qualified individuals with disabilities within the meaning of Title III of the ADA. Members of the proposed Class and California Subclass are qualified individuals with disabilities within the meaning of Title III of the ADA.

**Specified Public Transportation**

81.     Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce. 42 U.S.C. § 12184(a); 49 C.F.R. § 37.5(a), (f).

82.     Defendants are primarily engaged in the business of transporting people within the meaning of Title III of the ADA and its regulations. 42 U.S.C. § 12184(a). Defendants operate specified public transportation within the meaning of Title III of the ADA and its regulations. 49 C.F.R. §§ 37.3. The operations of Defendants affect commerce.

83.     Title III prohibits private entities providing specified public transportation

[3136282-12]

from imposing eligibility criteria that screen out or tend to screen out individuals with disabilities from fully enjoying the specified public transportation services provided by the entity, unless such criteria can be shown to be necessary for the provision of the services being offered. 42 U.S.C. § 12184(b)(1); 49 C.F.R. § 37.5(f); 28 C.F.R. § 36.301.

84.     By operating a transportation system with information and services offered on Defendants' website and mobile application that are not accessible to persons with disabilities, Defendants violate Title III of the ADA because Defendants are utilizing eligibility criteria that screen out or tend to screen out Plaintiffs and other blind individuals from fully enjoying the benefits and privileges available on the Greyhound website and mobile application. 42 U.S.C. § 12184(b)(1); 49 C.F.R. § 37.5(f); 28 C.F.R. § 36.301.

85.     It is a violation of Title III for private entities providing specified public transportation to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford the entity's goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. §§ 12184(b)(2)(a), 12182(b)(2)(a)(ii); 49 C.F.R. § 37.5(f); 28 C.F.R. § 36.302.

86.     By failing to modify practices, policies, and procedures to ensure that Defendants' website and mobile application are independently accessible to blind persons, Defendants are denying Plaintiffs full and equal access to the specified public transportation offered to the public.

87.     It is a violation of Title III for private entities providing specified public transportation to fail to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (defined as accessible electronic and information technology) unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

[3136282-12]

42 U.S.C. §§ 12184(b)(2)(B), 12182(b)(2)(A)(iii); 49 C.F.R. § 37.5(f); 28 C.F.R. § 36.303(a)-(c).

88.     By failing to provide accessible electronic and information technology to ensure the Greyhound website and mobile application are independently accessible to blind persons, Defendants are denying Plaintiffs full and equal access to the specified public transportation offered by Defendants.

<strong>Public Accommodation</strong>

89.     Title III of the Americans with Disabilities Act also prohibits discrimination on the basis of disability by owners, operators, lessees, and lessors of places of public accommodation. 42 U.S.C. § 12182(a).

90.     Defendants affect commerce by owning, operating, or leasing a travel service, a terminal, depot, or other station used for specified public transportation within the meaning of the definition of a public accommodation under Title III of the ADA and its regulations. 42 U.S.C. §§ 12181(7)(F)-(G); 28 C.F.R. § 36.104.

91.     Title III prohibits entities that own, operate, lease, or lease to places of public accommodation from subjecting an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a).

92.     In failing to make the Greyhound website and mobile application independently accessible to blind persons, Defendants violate Title III of the ADA by excluding Plaintiffs on the basis of disability from enjoying the same services, privileges, advantages, or accommodations that Defendants offer to the public.

93.     Under Title III, it is also unlawful for entities that own, operate, lease, or lease to places of public accommodation to afford, on the basis of disability, an individual or class of individuals with disabilities with an opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that

26

[3136282-12]

1  afforded other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

2      94.    In restricting Plaintiffs and other blind persons to remotely book tickets

3  through channels other than the most convenient methods used through the website and

4  mobile application, and by charging a convenience fee for using the telephone, Defendants

5  violate Title III of the ADA by offering an opportunity to participate in or benefit from a

6  good, service, facility, privilege, advantage, or accommodation that is not equal to that

7  afforded other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

8      95.    Title III further prohibits entities that own, operate, lease, or lease to places

9  of public accommodation from providing, on the basis of disability, an individual or class

10  of individuals with a good, service, facility, privilege, advantage, or accommodation that is

11  different or separate from that provided to other individuals. 42 U.S.C.

12  § 12182(b)(1)(A)(iii); 28 C.F.R. § 36.202(c).

13      96.    In restricting Plaintiffs and other blind persons to remotely book tickets

14  through channels other than the most convenient methods used through the website and

15  mobile application, and by charging a convenience fee for using the telephone, Defendants

16  violate Title III of the ADA by providing Plaintiffs and other blind persons, on the basis of

17  disability, with services, privileges, advantages, and accommodations that are different or

18  separate from that provided to other individuals. 42 U.S.C. § 12182(b)(1)(A)(iii); 28

19  C.F.R. § 36.202(c).

20      97.    It is a violation of Title III for entities that own, operate, lease, or lease to

21  places of public accommodation to fail to make reasonable modifications in policies,

22  practices, or procedures when such modifications are necessary to afford such goods,

23  services, facilities, privileges, advantages, or accommodations to individuals with

24  disabilities, unless the entity can demonstrate that making such modifications would

25  fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or

26  accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

27      98.    In failing to modify practices, policies, and procedures to ensure that

28  Defendants' website and mobile application are independently accessible to blind persons,

[3136282-12]

1  Defendants are violating Title III of the ADA by denying Plaintiffs full and equal access to

2  the goods, privileges, advantages, accommodations, facilities, and services, including

3  specified public transportation, that they offer to the public.

4    99.    In addition, it is a violation of Title III to utilize, directly or through

5  contractual or other arrangements, standards or criteria or methods of administration that

6  have the effect of discriminating on the basis of disability. 42 U.S.C. § 12182(b)(1)(d); 28

7  C.F.R. § 36.204.

8    100.    In administering the Greyhound website and mobile application in a manner

9  that is not independently accessible to blind persons, Defendants are denying Plaintiffs full

10  and equal access to the services, privileges, advantages, and accommodations of

11  Defendants' services because Defendants are utilizing methods of administration that have

12  the effect of discriminating on the basis of disability.

13    101.    The actions of Defendants were and are in violation of the Americans with

14  Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, and regulations promulgated thereunder.

15  Many members of Plaintiff NFB, including Plaintiffs DeWall, Flores, Hingson,

16  Richardson, and Thomas and members of the proposed Class, have been and continue to

17  be denied full and equal access to Defendants' services on multiple occasions when they

18  attempt to use the Greyhound website or mobile application. Defendants have failed to

19  take any equitable steps to remedy the unlawful conduct, and Defendants' violations of the

20  ADA are ongoing. Defendants' unlawful actions also violate the ADA by deterring

21  members of Plaintiff NFB and members of the proposed Class from attempting to access

22  the Greyhound website and mobile application. Unless the Court enjoins Defendants from

23  continuing to engage in these unlawful practices, Plaintiffs will continue to suffer

24  irreparable harm.

25    102.    Plaintiffs are entitled to injunctive relief. 42 U.S.C. § 12188.

26    WHEREFORE, Plaintiffs pray for relief as set forth below.

27

28

[3136282-12]

**SECOND CAUSE OF ACTION**
**(Violation of the California Unruh Civil Rights Act)**
**(California Civil Code §§ 51 & 52)**
**(Injunctive Relief and Damages on Behalf of the California Subclass)**

103.    Plaintiffs incorporate by reference the foregoing allegations as though fully set forth herein.

104.    The Unruh Civil Rights Act guarantees, *inter alia,* that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the state of California. Cal. Civ. Code § 51(b).

105.    Defendants' network of bus service and stations providing transportation to the general public in California is a business establishment within the jurisdiction of the state of California, and as such is obligated to comply with the provisions of the California Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.*

106.    The Unruh Act provides, *inter alia,* that a violation of the ADA, 42 U.S.C. §§ 12101, *et seq.*, also constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f).

107.    Defendants' discriminatory conduct alleged herein includes, *inter alia,* the violation of the rights of persons with disabilities set forth in Title III of the ADA and therefore also violates the Unruh Act. Cal. Civ. Code § 51(f).

108.    The actions of Defendants were and are in violation of the Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.* Members of Plaintiff NFB and the California Subclass are aware of Defendants' unlawful actions, and their knowledge of this discrimination has deterred members of Plaintiff NFB from attempting to access the Greyhound website and mobile application or otherwise travel on Greyhound buses on several occasions. Moreover, many members of NFB and other blind persons, including Plaintiffs DeWall, Flores, Hingson, Richardson, and Thomas, have been and continue to be denied access to Defendants' services on multiple occasions when attempting to use the Greyhound website and mobile application. Therefore, Plaintiffs are entitled to injunctive relief remedying the discrimination pursuant to California Civil Code § 52. Unless the

COMPLAINT FOR VIOLATIONS OF A.D.A., 42 U.S.C. §§ 12101, *ET SEQ.*, CAL. UNRUH CIVIL RIGHTS ACT, CAL. CIV. CODE §§ 51 & 52, AND CAL. DISABLED PERSONS ACT, CAL. CIV. CODE §§ 54-54.3

[3136282-12]

1    Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs

2    will continue to suffer irreparable harm.

3        109.    Individual Plaintiffs and the California Subclass are also entitled to statutory

4    minimum damages pursuant to California Civil Code § 52 for each and every offense in

5    violation of the Unruh Act. Cal. Civ. Code § 52(a).

6        WHEREFORE, Named Plaintiffs pray for relief as set forth below.

**THIRD CAUSE OF ACTION**
7    **(Violation of the California Disabled Persons Act)**
     **(California Civil Code §§ 54-54.3)**
8    **(Declaratory Relief and Damages on Behalf of the California Subclass)**

9        110.    Plaintiffs incorporate by reference the foregoing allegations as though fully

10   set forth herein.

11       111.    California Civil Code §§ 54-54.3 guarantee, *inter alia,* that persons with

12   disabilities are entitled to full and equal access, as other members of the general public

13   receive, to accommodations, advantages, facilities, and privileges of all "motorbuses,"

14   "common carriers," "motor vehicles," "places of public accommodation" and "other places

15   to which the general public is invited" within the jurisdiction of California. Cal. Civ. Code

16   § 54.1(a)(1). A violation of the ADA is also a violation of California Civil Code § 54.1.

17   Cal. Civ. Code § 54.1(d).

18       112.    Defendants are common carriers, motorbuses, motor vehicles, places of

19   public accommodation or other places to which the general public is invited and the

20   Greyhound website and mobile application are accommodations, advantages, facilities, and

21   privileges thereof under California Civil Code § 54.1(a)(1).

22       113.    Defendants are violating the rights of Named Plaintiffs and the Class to full

23   and equal access to common carriers, motorbuses, motor vehicles, places of public

24   accommodation, or other places to which the general public is invited under California

25   Civil Code §§ 54-54.3 by denying blind persons full and equal access to the

26   accommodations, advantages, facilities, and privileges of the Greyhound website and

27   mobile application. Defendants are also violating California Civil Code §§ 54-54.3 in that

28

30

[3136282-12]

1  their actions are a violation of the ADA. Cal. Civ. Code § 54.1(d). Members of Plaintiff

2  NFB and the California Subclass are aware of Defendants' unlawful actions, and their

3  knowledge of this discrimination has deterred them from attempting to access the

4  Greyhound website or mobile application or travel on Greyhound buses on several

5  occasions. Moreover, many members of NFB and other blind persons, including Plaintiffs

6  DeWall, Flores, Hingson, Richardson, and Thomas, have been and continue to be denied

7  access to Defendants' services on multiple occasions when attempting to use the

8  Greyhound website and mobile application.

9        114.   Plaintiffs thus seek declaratory relief based on Defendants' violation of

10  Named Plaintiffs' rights under California Civil Code §§ 54-54.3.

11       115.   Plaintiffs DeWall, Flores, Hingson, Richardson and Thomas and the

12  members of the proposed California Subclass are also entitled to statutory minimum

13  damages for each violation of California Civil Code §§ 54-54.3(a).

14       116.   Plaintiffs do not seek relief, injunctive or otherwise, under California Civil

15  Code § 55.

16       WHEREFORE, Named Plaintiffs pray for relief as set forth below.

17                          **FOURTH CAUSE OF ACTION**
                  **(Declaratory Relief on Behalf of Plaintiffs and the Class)**

18

19       117.   Plaintiffs incorporate by reference the foregoing allegations as if set forth

20  fully herein.

21       118.   An actual controversy has arisen and now exists between the parties in that

22  Plaintiffs contend, and are informed and believe that Defendants deny, that by failing to

23  provide a website and mobile application that are independently accessible to blind

24  persons, Defendants fail to comply with applicable laws, including but not limited to

25  Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*

26       119.   A judicial declaration is necessary and appropriate at this time in order that

27  each of the parties may know their respective rights and duties and act accordingly.

28       WHEREFORE, Plaintiffs request relief as set forth below.

[3136282-12]

1

**PRAYER FOR RELIEF**

2       WHEREFORE, Plaintiffs pray for judgment as follows:

3       1.      An order certifying the nationwide Class and the Subclass under Rule 23 of

4   the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives of the

5   Class and Subclass and Plaintiffs' attorneys as Class Counsel to represent members of the

6   Class and Subclass;

7       2.      A permanent injunction pursuant to the Americans with Disabilities Act, 42

8   U.S.C. §§ 12181, *et seq.*, and the Unruh Act, California Civil Code §§ 51-52, requiring

9   Defendants to take the steps necessary to ensure that the Greyhound website and mobile

10  application are fully and equally accessible to blind persons who use screen-reader

11  software;

12      3.      A declaration that Defendants discriminate against blind persons by failing to

13  ensure that the Greyhound website and mobile application are fully and equally accessible

14  to blind persons who use screen-reader software, in violation of Title III of the ADA, 42

15  U.S.C. §§ 12181, *et seq.*, California Civil Code §§ 54-54.3, and California's Unruh Act,

16  California Civil Code §§ 51-52.;

17      4.      For individual Plaintiffs DeWall, Flores, Hingson, Richardson, and Thomas,

18  and the proposed California Subclass, applicable statutory damages pursuant to California

19  Civil Code § 52(a) or California Civil Code § 54.3.

20      5.      An order awarding Plaintiffs reasonable attorneys' fees and costs, as

21  authorized by 42 U.S.C. § 12188, California Civil Code § 52, and California Civil Code

22  § 54.3; and

23      6.      For such other and further relief as the Court deems just and proper.

24

25

26

27

28

32

COMPLAINT FOR VIOLATIONS OF A.D.A., 42 U.S.C. §§ 12101, *ET SEQ.*, CAL. UNRUH CIVIL RIGHTS ACT,
CAL. CIV. CODE §§ 51 & 52, AND CAL. DISABLED PERSONS ACT, CAL. CIV. CODE §§ 54-54.3

[3136282-12]

1   DATED: June 12, 2017                Respectfully submitted,

2                                       ROSEN BIEN GALVAN & GRUNFELD LLP

3

4                                       By:  /S/ Michael S. Nunez
                                             _____
5                                            Michael S. Nunez

6

7                                       TRE LEGAL PRACTICE

8

9                                       By:  _____
                                             Timothy Elder
10

11                                      Attorneys for Plaintiffs

12
    **I hereby attest that I have on file all holographic signatures corresponding**
13  **to any signatures indicated by a conformed signature (/S/) within this**
    **e-filed document.**
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATIONS OF A.D.A., 42 U.S.C. §§ 12101, *ET SEQ.*, CAL. UNRUH CIVIL RIGHTS ACT, CAL. CIV. CODE §§ 51 & 52, AND CAL. DISABLED PERSONS ACT, CAL. CIV. CODE §§ 54-54.3

[3136282-12]